**Exhibit A**

Copy of Proposed Plan of Reorganization

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** | **CASE NO. 10-06915 (BKT)** |
| **DESARROLLO RIO DORADO, INC.** | |
| Debtor | **CHAPTER 11** |

**DEBTORS' PLAN OF REORGANIZATION,**

**DATED 1 May 2011**

**ARTICLE I**

**SUMMARY**

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Desarrollo Rio Dorado, Inc from the net cash generated from the transfer of debtor's assets and real property to secured creditor DFS, and the funds generated by the carve-out provisions of the agreement between Debtor, the Unsecured Creditors' Committee and DFS.

This Plan provides for one class of secured claims; one class of priority claims; one

class of unsecured claims; and one class of related parties. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 12 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 <u>Class 1</u>. Administrative expense claims under § 507(a) (2),

2.02 <u>Class 2</u>.          Secured Claims

II A   The claim of Doral Bank/DF Servicing LLC, and/or entities which may be holders in due course of the secured claim against the estate, to the extent allowed as a secured claim under § 506 of the Code.

II B.   CRIM

Real property taxes. The payment of property taxes will be addressed by the

purchaser of the project. Their classification on one of the following:

- Taxes assessed over the main parcel as has been diminished by segregation.

- Taxes over units sold.

- Taxes over units not yet sold

2.03   <u>Class</u> III.       Priority tax claims under § 507(a) (8)).

2.04   Class IV    Unsecured claims allowed under § 502 of the Code.

2.05   Class V     Parties related to the Debtor

- Equity security holders

-related investors

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,

## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Administrative Expense Claims.  Holders of administrative expense claims allowed under § 503 of the Code will be paid either in full on the effective date of this Plan (as defined in Article VII), in cash.  These include fees accrued and approved by the Court before the date of Confirmation

Realtor fees will be paid only as to the two units actually sold, upon closing. Closing will be made by DFS as owner.

3.02     United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

3.03     Priority Tax Claims.  Debtor does not recognize any pending tax claims. Should any be owed, each holder of a priority tax claim will be paid in full plus 3.5% interest to maintain present value, (consistent with § 1129(a)(9)(C) of the Code), upon the sale of the remnant lot.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class I – Administrative expenses | Unimpaired. | Paid in full on the effective date of this Plan (as defined in Article VII), in cash. |
| Class III – Priority Tax claims | Uninpaired | Paid in full (retained income tax portion) on the effective date, in cash |
| Class IIA – Secured Claim of Doral/DF | Un impaired | Paid in full upon transfer of property |
| Class II B CRIM | unimpaired | Assumed by DFS upon the transfer of units |
| Class IV - General Unsecured Creditors | impaired | Payment of approximately 12% in cash on the effective date. |
| Class V –Related parties | impaired | No payments are projected to Class V clams. |

# ARTICLE V

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    <u>Disputed Claim</u>.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    <u>Delay of Distribution on a Disputed Claim</u>.  With the exception of Doral/DFS, no distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

# ARTICLE VI

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    There are no executory contracts or unexpired leases to be assumed or rejected.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

Payments and distributions under the Plan will be funded by the following:

The Plan will be financed from the funds generated by the carve-out provisions of the transfer of property to DF Servicing.

Attached are cash flow projections.

## ARTICLE VIII

## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction.    The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.02    Effective Date of Plan. The effective date of this Plan is the day after day number fifteen day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03 <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05 <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Puerto Rico govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.]

8.07 <u>Corporate Governance</u>.

The confirmation of the Plan of Reorganization will have the following effect upon Debtor's or the Reorganized Debtor's charter:

A. Prohibition to Debtor and/or the Reorganized Debtor from issuing non-voting participations, and providing, as to the classes of Debtor's and/or the Reorganized Debtor's securities possessing voting power, for the fair and equitable distribution of such power among such classes, including, in the case of any class of participation having preference over other classes with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends; and

B. Provisions which are fair and equitable and in accordance with sound business and accounting practices, with respect to the terms, positions, rights and privileges of the several classes of Debtor's or the Reorganized Debtor's securities, including without limiting the generality of the foregoing, provisions with respect to the issuance, acquisition, purchase and payments of dividends thereon; and provisions with respect to the making not less than once annually, of periodic reports to equity security holders which shall include profit and loss statements and balance sheets prepared in accordance with sound business and accounting practices.

C. Prohibition that Debtor or the Reorganized Debtor will not pay dividends to its equity holders, or to any other equity holder which may exist in the future, until creditors are paid In accordance with the Plan.

## ARTICLE IX

## DISCHARGE

**Debtor is a corporation and § 1141(d) (3) is applicable**

<u>Discharge.</u> On the confirmation date of this Plan, the debtor will not be discharged from any debt that arose before confirmation of this Plan, as no operation will be made after confirmation, and the plan provides for the liquidation of substantially all assets of the estate.

## ARTICLE X

## OTHER PROVISIONS

Retention of Jurisdiction.

After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to the Bankruptcy Case and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code:

(a) to hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any disputed Claim;

(b) to hear and determine any and all applications by Professionals for compensation and reimbursement of expenses pursuant to Section 2.2 (c) hereof;

(c) to hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and fix and allow any Claims resulting therefrom;

(d) to determine any and all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the Confirmation Date;

(e) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, including but not limited to the Litigation Trust Agreement;

(f) to enforce the provisions of the Plan subject to the terms thereof

(g) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Documents or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(h) to determine such other matters as may be provided for in the Confirmation Order.

Respectfully submitted,

By /s/ Manuel Perez Nevarez
Manuel Perez Nevarez - President

Reorganization and Bankruptcy Legal Services, P.S.C.
P.O. Box 9023115
San Juan, P.R. 00902-3115
TEL.: (787) 724-2867 FAX (787)724-2463
Email: Rbls@Gmail.Com

/S/ Carlos E. Rodriguez Quesada, Esq.
USDC-PR #124810

/S/ Nelson Robles Diaz, Esq.
USDC-PR #204410